[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10376

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

$389,820.00 IN UNITED STATES CURRENCY,

$15,780.00 IN UNITED STATES CURRENCY,

$4,550.00 IN UNITED STATES CURRENCY,

1972 CHEVROLET CHEVELLE SS 396, VIN:

1D37H2R582820, WITH ALL APPURTENANCES

AND ATTACHMENTS THEREON,

MISCELLANEOUS JEWELRY, NAMELY:

18K YELLOW GOLD ROLEX WATCH

SIDE SERIAL NOS. V390198 AND 218238

INSIDE SERIAL NOS. 2418; 3-ROW 14K YELLOW

GOLD DIAMOND BRACELET WITH 11.47
CARATS IN 93 DIAMONDS; A 32" 10K
YELLOW GOLD LINK CHAIN NECKLACE;
A 10K YELLOW GOLD AND DIAMOND
RECTANGULAR MEDALLION,

                                        Defendants-Appellants,

RUBY BARTON,

                                        Claimant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket Nos. 2:20-cv-01048-WKW-SMD,
2:16-cv-00985-ECM-WC

_____

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

    This is a forfeiture action. Claimant Ruby Barton appeals the district court's order granting summary judgment for the government and denying her cross-motion for summary judgment. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 13, 2016, officers from the Millbrook, Alabama police department found Rodriguez Garth at a Sonic Drive-In after he had been shot. Officers from the Elmore County Sheriff's Office obtained a warrant from the county's circuit court to search Garth's home. Local officers, aided by Drug Enforcement Administration agents, executed the warrant and searched the house on May 14. They seized cash, jewelry, and a 1972 Chevrolet Chevelle ("the property"). They also found narcotics, firearms, and other drug paraphernalia. After the search, the sheriff's office handed over actual possession of the property to the DEA. Garth died about a month after the search.

Barton filed two claims with the DEA on behalf of Garth's estate, asserting ownership of the property. She claimed ownership of the cash on July 27, 2016, and she claimed ownership of the car and jewelry on September 29, 2016. The government filed in federal district court a motion to extend the ninety-day deadline to file a forfeiture complaint under 18 U.S.C. section 983(a)(3)(A). The district court granted the motion and extended the deadline to December 30, 2016. The government then filed a verified complaint in district court on December 20, 2016, seeking forfeiture of the property.

Barton moved to dismiss the complaint for lack of in rem jurisdiction, arguing the county circuit court assumed control over the property when it issued the warrant and never ceded control. While the motion was pending, on May 3, 2017, the circuit court

entered an "order to turn over property." The turnover order "direct[ed]" the sheriff's office "to forward" the property to the DEA "pursuant to" *Little v. Gaston*, 232 So. 3d 231 (Ala. Civ. App. 2017).

The district court denied the motion to dismiss and later granted summary judgment on the merits for the government. After Barton appealed, we reversed and remanded. *See United States v. $389,820.00 in U.S. Currency*, 829 F. App'x 488, 491 (11th Cir. 2020) ("*$389,820.00 I*"). We agreed with Barton that the district court lacked jurisdiction when the government filed its first complaint because "the state court first assumed in rem jurisdiction . . . when the property was seized pursuant to the state court warrant." *Id.* (citing *Little*, 232 So. 3d at 235); *see also id.* (noting that federal and state courts cannot simultaneously exercise in rem jurisdiction over the same property). We rejected the government's argument that the turnover order retroactively cured the jurisdictional defect. *Id.* We acknowledged, though, that "[g]iven the state court's turn-over order, the district court may be able to exercise jurisdiction over the defendant property." *Id.*

One week after we issued our opinion, on October 14, 2020, Barton sued Elmore County's sheriff in the circuit court. Her complaint, filed on behalf of Garth's estate, sought an order that the sheriff's office return her the property.[1]

---

[1] Barton earlier sued in state court in 2017 seeking to recover the property. The state trial court dismissed her case, finding that the federal district court

When Barton filed her state-court action, *$389,820.00 I* was still pending in federal district court after our remand. On December 4, 2020, the district court dismissed the *$389,820.00 I* complaint without prejudice, citing its lack of jurisdiction. On December 17 the government filed the operative complaint for purposes of this appeal in the district court, again seeking forfeiture of the property.

Barton moved to dismiss for lack of jurisdiction. She argued that the turnover order was a "legal nullity" because the circuit court conditioned its turnover on the property's ownership being determined in *$389,820.00 I*, in which federal jurisdiction didn't exist. She also argued the circuit court reacquired in rem jurisdiction when she filed her October 2020 complaint, pointing out that no federal court exercised lawful jurisdiction over the defendant property at that time.

The district court denied Barton's motion. Citing the turnover order, the district court found that DEA agents lawfully and actually possessed the defendant property starting on May 3, 2017. The district court found that the DEA's possession, alone, created exclusive federal jurisdiction and that the existence of any forfeiture action in federal court was irrelevant. And the district court rejected Barton's nullity argument, finding the circuit court did not condition the turnover order on the existence of any pending forfeiture action in federal court.

---

had jurisdiction. The Alabama Supreme Court affirmed the dismissal without opinion.

The government moved for summary judgment on the merits. Barton filed a cross-motion for summary judgment, repeating her jurisdictional arguments. She also argued the government's claims were time-barred under 18 U.S.C. section 983(a)(3)(A) (requiring the government to file a forfeiture action ninety days after a claimant files a claim), and 19 U.S.C. section 1621 (establishing a five-year statute of limitations).

The district court granted the government's motion and denied Barton's motion. The district court again found it had jurisdiction over the property. It also found that the government's action was timely under section 1621, and it equitably tolled section 983(a)(3)'s ninety-day period because the government pursued forfeiture diligently. On the merits, it found that the government established a substantial connection between the defendant property and illegal drug activity—making it subject to forfeiture under 21 U.S.C. section 881.

Barton timely appealed the district court's summary judgment order.

## STANDARDS OF REVIEW

We review de novo district court rulings on jurisdiction. *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1339 (11th Cir. 2018).

We also review de novo "a district court's application of a statute of limitations" on summary judgment. *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 750 (11th Cir. 2000). That includes a district court's application of the equitable tolling doctrine. *Chang v. Carnival Corp.*, 839 F.3d 993, 996 n.4 (11th Cir. 2016). Summary

23-10376                Opinion of the Court                7

judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## DISCUSSION

Barton argues on appeal the district court lacked in rem jurisdiction and the government's action was untimely under 18 U.S.C. section 983(a)(3)(A) and under 19 U.S.C. section 1621.[2] We disagree.

### *Jurisdiction*

We begin with jurisdiction. The same principles we discussed in *$389,820.00 I* control the jurisdictional issue here. *See* 829 F. App'x at 490–91. Under 21 U.S.C. section 881 the government may seize certain property related to drug crimes. 21 U.S.C. § 881(a)(6), (b). Federal district courts "have original jurisdiction, exclusive of the courts of the [s]tates, of any action or proceeding for the recovery or enforcement of any . . . forfeiture." 28 U.S.C. § 1355(a).

Forfeiture actions initiated under section 881 are "action[s] in rem." *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 84 (1992). "Disposition of the property is an integral part of the court's ability to grant the relief sought in the proceedings." *United States v. $270,000.00 in U.S. Currency, Plus Int.*, 1 F.3d 1146, 1148

---

[2] Barton does not challenge the district court's finding that the property is forfeitable under 21 U.S.C. section 881.

(11th Cir. 1993). Thus "[i]n rem jurisdiction derives entirely from the [federal] court's control over the defendant res." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1435 (11th Cir. 1991) (en banc) (citations omitted). It has been long understood "that a valid seizure of the res is a prerequisite to the initiation of an in rem civil forfeiture proceeding." *Republic Nat'l Bank of Miami*, 506 U.S. at 84 (citations omitted).

In rem jurisdiction is exclusive—"[a] state court and a federal court cannot simultaneously exercise in rem jurisdiction over the same property." *$270,000.00*, 1 F.3d at 1147–48 (citing *Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189, 195 (1935)); *see also $389,820.00 I*, 829 F. App'x at 490 (citing *$270,000.00*, 1 F.3d at 1147). So then, because the Alabama court assumed control over the defendant property here before the government did, and because the state court still controlled the property when the government filed its *first* complaint, we concluded the district court lacked jurisdiction in *$389,820.00 I*. 829 F. App'x at 491. We relied on Alabama law that a circuit court "assumes constructive control over the seized property" when it issues a search warrant, "*which it retains until it orders otherwise.*" *Little*, 232 So. 3d at 235 (emphasis added); *see also $389,820.00 I*, 829 F. App'x at 491 (citing *Little*, 232 So. 3d at 235).

Here, there is no jurisdictional defect. It is undisputed that the federal government actually possessed the defendant property when it filed the operative verified complaint. *Cf. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d at 1435 ("In rem

23-10376            Opinion of the Court            9

jurisdiction derives entirely from the [federal] court's control over the defendant res." (citations omitted)).  And critically, unlike *$389,820.00 I*, no state court controlled the property when the government filed the operative complaint.  It is undisputed that *before* the government filed that complaint on December 17, 2020, the warrant-issuing circuit court entered a turnover order on May 3, 2017.  *Cf. Republic Nat'l Bank of Miami*, 506 U.S. at 84 ("[A] valid seizure of the res *is a prerequisite* to the initiation of an in rem civil forfeiture proceeding."  (emphasis added and citations omitted)).  That order "direct[ed]," in no uncertain terms, the sheriff's office "to forward" the defendant property to the DEA (which, in fact, had already actually possessed it).[3]  So although the circuit court had "constructive control over the seized property" first, it did not "retain[]" that control because "it order[ed] otherwise" through the turnover order.  *Little*, 232 So. 3d at 235.

Barton argues that her 2020 circuit court lawsuit, filed before the government's operative complaint, revested the state circuit court with in rem jurisdiction.  Barton is mistaken.  Under Alabama law, a circuit court has in rem jurisdiction only where there is state "possession *and* the filing of an in rem action."  *Ruiz v. City of Montgomery*, 200 So. 3d 26, 29–30 (Ala. Civ. App. 2015) (citing *Green v. City of Montgomery*, 55 So. 3d 256, 263 (Ala. Civ. App. 2009)).  Although Barton filed a purportedly in rem action against the county

---

[3] We disagree with Barton that the turnover order somehow became a "nullity" once we issued our first opinion.  The turnover order was unconditional and contained no language purporting to retain state jurisdiction.

sheriff, the DEA "had actual possession of the [property] *before* [she] filed [her] complaint in the trial court." *Ruiz*, 200 So. 3d at 30; *cf. Green*, 55 So. 3d at 264 ("The federal government controls the res when it is 'taken or detained' during a time when no other court has jurisdiction over the res. . . . '[P]roperty taken' refers to actual possession . . . ." (quoting 21 U.S.C. § 881(c))).

In rem jurisdiction thus did not attach to Barton's circuit court suit under state law when she filed it. Instead, federal jurisdiction existed when the government filed the operative complaint, exclusive to any state court. *See $270,000.00*, 1 F.3d at 1147–48.

*Timeliness*

The jurisdictional issue resolved, we turn to Barton's timeliness arguments. First, we can easily resolve her contention that the government did not file the operative complaint within five years of the action accruing, as required by 19 U.S.C. section 1621. Section 1621's five-year period begins to run at "the time when the alleged offense was discovered." 19 U.S.C. § 1621. Officers discovered Garth's criminal activity in May 2016 when they searched his home, and the government filed the operative complaint in December 2020—about four years later.

Second, even assuming the government did not satisfy 18 U.S.C. section 983(a)(3)(A)'s requirement that it "file a complaint" within ninety days of Barton filing her claims, the district court did not err in equitably tolling that period. Equitable tolling "allows a court to toll the statute of limitations until such a time that the

court determines would have been fair for the statute of limitations to begin running." *Dotson v. United States*, 30 F.4th 1259, 1268 (11th Cir. 2022) (quoting *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006)). It applies where a party untimely files a complaint "because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Id.* (quoting *Arce*, 434 F.3d at 1261).

Here, the government diligently pursued forfeiture since 2016, and its delay in filing the operative complaint was "unavoidable even with [that] diligence." *Id.* (quoting *Arce*, 434 F.3d at 1261). Barton does not dispute that the government's *$389,820.00 I* complaint satisfied section 983(a)(3)(A)—she contends only that the operative complaint was untimely.[4] The government litigated *$389,820.00 I* for several years and dismissal of the *$389,820.00 I* complaint for lack of jurisdiction was "beyond [its] control." *Id.* (quoting *Arce*, 434 F.3d at 1261). And after the district court dismissed *$389,820.00 I*, the government did not sit on its claim. It filed the operative complaint less than two weeks after the district court dismissed *$389,820.00 I* without prejudice.

---

[4] We do not decide whether satisfying section 983(a)(3)(A)'s ninety-day period in the first instance necessarily means that all later complaints seeking forfeiture of the same property are timely under the statute. As the district court observed, section 983(a)(3)(A) "does not address the unique situation here (where the ninety-day requirement is met in the first case but that case is later dismissed for lack of in rem jurisdiction and then refiled with in rem jurisdiction)." *United States v. $389,820.00 in U.S. Currency*, No. 2:20-cv-1048, 2022 WL 17573410, at *1 n.2 (M.D. Ala. Dec. 9, 2022).

## CONCLUSION

The district court had jurisdiction to enter summary judgment for the government and the government timely filed its operative complaint.

**AFFIRMED.**